ATKINS and others, Appellants, vs. DIGGLES, Commissioner of Savings and Loan Associations, Respondent.

*September 11—October 8, 1957.*

For the appellants there was a brief by *Galin & Jacobson,* attorneys, and *Lloyd S. Jacobson* of counsel, all of Milwaukee, and oral argument by *Lloyd S. Jacobson.*

For the respondent there was a brief by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, and oral argument by *Mr. Tulane.*

MARTIN, C. J. Appellants, all business men of Milwaukee county, made application to the commissioner of savings and loan associations under ch. 215, Stats., to organize an association to be known as the Fox Bay Savings & Loan Association in the city of Glendale, Milwaukee county.

A hearing on the application was had before the commissioner on June 16, 1954. Evidence was adduced with respect to the proposed location of the association, the distances from

existing savings and loan associations and other lending institutions, the population of Glendale, its growth and that of the surrounding villages, the extent of building going on in the area, potential buying power, labor supply, etc.

Petitioner Atkins testified that he intended to become secretary of the proposed association; that he was a lawyer who has engaged in the construction of new homes, but has never had a new home in his possession for more than three months; that the association would have an initial subscription of $250,000; that it would have $3,000,000 in assets within three years; that it contemplated paying a three and one-half per cent dividend rate; that arrangements had been made to employ one Joseph Grundel to give technical assistance.

Another petitioner, Joe Smith, testified he was in the insurance business; another, Julius Pieper, testified he was an electrical contractor.

The evidence as to the proposed operations of the association and as to the witnesses' backgrounds was offered without objection.

After the hearing an investigation was made by R. J. Winkowski, supervisor of the savings and loan department, and a report submitted to the commissioner on July 26th. The conclusions made by Winkowski in said report include, among others, that no need exists for the chartering of a new association in Milwaukee county to take care of the mortgage-loan demands in the Glendale area, and, in effect, that the proposed management and proposed operations of the association were not such as would warrant the chartering of the new association; and his recommendation was that the commissioner refuse to issue a certificate of authority. The commissioner thereafter made findings of fact and conclusions of law disapproving the application of the petitioners.

The applicable statutes are contained in the following subsections of sec. 215.02:

"(2) *Who may organize.* Adult citizens of Wisconsin desiring to organize a savings and loan association under ·this chapter shall make application to the commissioner of savings and loan associations in the manner prescribed on a form furnished by the commissioner.

"(3) *Application to organize.* The application to organize an association shall be in duplicate and shall set forth:

"(a) The location of the proposed association;

"(b) The character of the business to be transacted;

"(c) The full name, residence, and occupation of each applicant;

"(d) Such other information as the commissioner requires;

"(e) The need of an additional association in the locality in which they intend to locate.

"(4) *Application fee.* The applicants shall pay to the commissioner $100 to defray the cost of investigation of the application, which sum shall be paid by him into the state treasury to the credit of the savings and loan department. . . .

"(6) *Certificate of authority, when issued.* If the application is approved, the commissioner shall issue to the applicants a certificate of authority to effect a temporary organization, consisting of a chairman, a secretary, and a treasurer; to execute and file articles of incorporation; to adopt and file by-laws; rules for the procedure of the incorporators and conduct of the first meeting of the members; and to open subscription books for shares. . . .

"(14) *Certificate of incorporation, when issued.* Associations may be organized and conducted under the general laws relating to corporations except as otherwise provided in this chapter; but the articles of incorporation, amendments thereof, and all papers relating thereto shall be filed with the commissioner. He may issue the certificate of incorporation, but not until a verified copy of the by-laws adopted by the incorporators is filed with and approved by him; and until such certificate of incorporation is issued, no association shall have legal existence and only such by-laws and amendments

thereof as have been filed and approved shall be operative. . . .

"(18) *Issuance of certificate of authority and of incorporation discretionary.* The commissioner shall have discretionary power in the granting of certificates of authority to incorporators desiring to organize such associations. He may also refuse to issue certificates of incorporation when the plan of operation, outlined in the articles of incorporation and the by-laws submitted, does not comply with the statutes or the accepted and prevailing practices of associations in this state; or when the incorporators or any of them are not of such character, responsibility, and general fitness as to warrant the belief that the association will be conducted for the best interests of the members; when the location of the association is so close to an existing association that its business might be interfered with and the support of the new association would not be such as to assure its success; or when other good and sufficient reasons exist for such refusal."

No challenge is here made as to the constitutionality of the statutes.

It may be considered that the statutes contemplate an orderly procedure of two steps in the organization of savings and loan associations: First, the issuance by the commissioner of a certificate of authority upon hearing and approval of the application; second, the issuance of a certificate of incorporation upon approval of the location and the plan of operation, and upon being satisfied that the qualifications of the incorporators are such that the association will be conducted for the best interests of the members.

Appellants argue, for the first time in this court, that they are still in the first step of the procedure and that the only standard which the commissioner was authorized to consider was that of "need." The record plainly shows, however, that they waived any objection to the consideration of other standards by voluntarily putting into the record evidence as to their proposed plan of operation and the qualifications of

the incorporators and their proposed employees. Atkins testified that the association would raise at least $250,000 initially and would have $3,000,000 in assets within three years; that it intended to make three and one-half per cent dividend payments; that no one in the group of incorporators has ever operated a savings and loan association, but that Joseph Grundel, with eight years' savings and loan experience, had agreed to be employed by them.

Appellants now contend:

"There was no testimony or evidence at that hearing as to the prospect of success. The findings of the commissioner as to lack of experience and unfeasibility are based on the report of investigation which was initiated one month after the hearing and submitted to the commissioner without notice to petitioners. How could the petitioners object to or waive something they didn't even know about until it was too late to do anything about it?"

This is contrary to the fact. There was testimony at the hearing as to the proposed plan of operations; there was testimony respecting the experience and qualifications of the incorporators and Mr. Grundel, their proposed employee; this was testimony bearing on the "prospect of success" and it was given without objection. Further, appellants knew that an investigation would be made because they had paid the fee required for it by the statute and, obviously, such investigation would be given considerable weight by the commissioner. Incidentally, they had the opportunity to, and did, cross-examine Mr. Winkowski about his investigation on the hearing on review by the advisory committee.

Assuming, for the purpose of answering appellants' main argument, that the commissioner had only to decide the question of "need" and should have decided it in their favor, they have not shown any prejudice as the result of his determination of the other issues which he was to consider

before granting a certificate of incorporation. The record shows no request for time to present evidence on the matters which appellants now claim should be considered only on the "second step" of the proceedings. Their request for judicial review filed January 24, 1955, alleged no error because the so-called "first" and "second" steps were consolidated.

In view of the evidence given at the hearing with respect to the qualifications of the incorporators and the proposed plan of operations, we cannot see that it makes any difference whether formal articles of incorporation and by-laws were before the commissioner or not. Such documents would not, for instance, disclose any facts with regard to the "character, responsibility, and general fitness" of the incorporators. With respect to that standard, no amount of time or opportunity to comply with the requirements would change the facts from those testified to at the hearing: None of the incorporators had any experience in the savings and loan business. We cannot agree with appellants that "background and experience" cannot be read into the standard of "general fitness," since the term is modified in the statute by the clause "as to warrant the belief that the association will be conducted for the best interests of the members," language which can only mean fitness for the conduct of a savings and loan association. The lack of past experience in operating such an association is a circumstance to be considered by the commissioner. And there was no objection by appellants to testimony on qualifications of the incorporators. As to the employment of Mr. Grundel,—at the hearing before the advisory committee on appeal from the commissioner's decision, apparently Mr. Grundel had dropped out of the picture and one Edward Michelson was being proposed as the employee with the necessary experience. Michelson testified as to his experience in the savings and loan business and stated that he was willing to assist the incorporators on a part-time basis "to any

extent that is necessary to help them get started," although he also stated he never had any experience with a newly chartered organization. He further testified that he was presently engaged as a correspondent for insurance companies in writing mortgages and selling mortgages to the insurance companies,—companies which have made loans in the Glendale area during the time of his association with them. Michelson intended to retain his present connections, but he did not believe that would conflict with his duties in the employment of the appellants. This testimony at least presented to the advisory committee a situation from which it could conclude that Mr. Michelson's services would not supply the necessary background and experience for satisfactory administration of the proposed association.

On the hearing before the advisory committee appellants submitted a projection of estimated operations based on a three per cent dividend rate, but, as the committee found, they did not state how they could expect to acquire share capital if the dividend rate was less than that of existing associations operating in areas near the location of the proposed association. It was for the advisory committee, having the evidence before it and applying to it their own expert knowledge and experience in the savings and loan field, to decide whether or not that evidence warranted the belief that the appellants would be able to establish a sound and financially stable association.

We could assume that the appellants had established "need," but that would be of no help to them because it was necessary that the other conditions set forth in the statutes be satisfied. Under sec. 215.70, Stats., providing for involuntary liquidation of savings and loan associations, the commissioner may take possession of an association when he finds that it is conducting its business in an unauthorized or unsafe manner or is in an unsound or unsafe condition to transact its business or cannot with safety and expediency

continue business. Since the evidence in this case was not such that the commissioner could conclude that the proposed association would be a sound and stable one, certainly he is warranted in refusing the charter in the first place.

It is significant that on the hearing before the advisory committee appellants failed, as they did before the commissioner, to object to consideration of any other standard than that of "need." Appellants do not seriously argue that the record produced on the hearings does not support the findings of the commissioner and the advisory committee. Their argument is, in effect, that if they have another opportunity, they can produce evidence that will satisfy the statutes. Nowhere in the record is there any indication that they were not fully aware of the standards they would have to meet or that they were not prepared to present evidence, not only as to need, but as to all the requirements of the statutes. This was the situation on the first hearing, and when the commissioner ruled unfavorably on their application they took their appeal to the advisory committee, not just from the finding on need, but from all the findings. On review by the committee, they were again permitted to produce evidence and again the evidence was not limited to need, but dealt with all the statutory standards.

While, as pointed out above, the statutes may contemplate an orderly two-step procedure, we see no prejudice to the appellants in combining the two steps as long as they were prepared to, made no objection, and did present evidence tending to establish all the standards required by the statutes. Appellants cannot be permitted to "lie in the weeds" during the hearing before the commissioner and then, when an unfavorable determination is made, complain that he went too far.

Appeal is also taken from the order denying appellants' motion for a new trial on the grounds of newly discovered

evidence. That evidence relates solely to the standard of "need," and our decision on the appeal from the judgment renders the question raised on the motion moot.

*By the Court.*—Judgment and order affirmed.